1  KAREN P. HEWITT
   United States Attorney
2  SAMUEL W. BETTWY
   Assistant U.S. Attorney
3  California State Bar No. 94918
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-7119
   Facsimile:  (619) 557-5004
6  Email: samuel.bettwy@usdoj.gov

7  Attorneys for Federal Respondents

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEUK FUNG YONG, | Case No. 08cv0007-LAB (WMc) |
| Petitioner, | |
| vs. | |
| MICHAEL CHERTOFF, Secretary of Homeland Security, et al., | |
| Respondents. | |

GOVERNMENT'S RETURN

IN OPPOSITION TO PETITION

FOR WRIT OF HABEAS CORPUS

I

INTRODUCTION

Petitioner Yong seeks release from Department of Homeland Security ("DHS") custody based on the fact that more than eighteen months have elapsed since he was taken into DHS custody on August 7, 2006. Yet, Yong does not allege that his administrative proceedings were unduly lengthy, and he neglects to inform the Court that he has requested four extensions of time to file his opening brief before the Ninth Circuit. The facts of this case make it clear, *reductio ad absurdum*, when Zadvydas, Tijani and Nadarajah do not apply. As explained below, the correct test is (1) whether a petitioner's detention is voluntary and, if not, (a) whether the duration of pending administrative removal proceedings has been unduly prolonged by the Government or (b) whether removal is not significantly likely in the reasonably foreseeable future.

Apart from the fact that Yong's detention is voluntary given that he can pursue his petition for review from abroad, see Cruz-Ortiz v. Gonzales, No. 06-55654, 2007 WL 580670 (9th Cir. Feb. 22, 2007) (unpublished) [copy attached], he is not entitled to release pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001), Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005), or Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006), because DHS has been able to obtain a travel document from the Chinese government for Yong's repatriation [Ex. 81],[1] and Yong's petition for review proceedings have, as a matter of law, a definite termination point that is within the control of the parties and the judiciary. The only apparent obstacle to Yong's repatriation has been his own actions.

Despite Yong's request for four continuances before the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA"), his removal proceedings were completed in less than six months, which is consistent with the average length of time sanctioned by the Supreme Court in Demore v. Kim, 538 U.S. 510 (2003). Yong's petition for review proceedings before the Ninth Circuit have been prolonged only because Yong has

---

[1] "Ex." refers to the accompanying exhibits, which comprise a true copy of documents contained in Yong's DHS "A-File, No. A35 747 485.

1                                                                       08cv0007-LAB

requested and been granted <u>four</u> extensions of time to file his opening appellate brief. Clearly, all delay in Yong's proceedings, thus far, is attributable only to him. The instant Petition should therefore be summarily denied.

## II

## STATEMENT OF FACTS

Petitioner Yong is a native and citizen of the Republic of China (Hong Kong). [Exs. 64-65; Pet., para. 2.] On July 5, 1978, he immigrated to the United States. [Exs. 1, 49, 65.] On January 24, 1994, he was convicted of fraudulent use of another's access card and sentenced to one year in jail and three years of probation. [Exs. 2, 7-9, 23-36.] On January 18, 1995, he was convicted of possession of another's driver's license to commit forgery and sentenced to fifteen days in jail and three years of probation. [Exs. 11-13.] On January 11, 2001, he was convicted of possession for sale of a controlled substance and sentenced to 180 days in jail and three years of probation. [Exs. 16, 37-40.] On July 12, 2005, he was convicted of being under the influence of a controlled substance and sentenced to 90 days in jail and five years of probation. [Ex. 20.] On September 21, 2005, he was convicted of the sale or transportation of a controlled substance and sentenced to two years in prison. [Exs. 18, 41-42.]

On July 20, 2006, DHS commenced removal proceedings on the basis of the September 21, 2005 conviction and, on August 7, 2006, took Yong into custody when he completed his state prison term. [Exs. 3-4, 49-53.] Yong requested and was granted continuances at his hearings before the IJ on August 16, September 6, and September 27, 2007. [Exs. 54-61.] At his final hearing on October 25, 2006, the IJ ordered him removed from the United States to China. [Exs. 62-68.]

Yong filed his notice of appeal twenty-one days later, on November 16, 2006. [Exs. 69-70.] Yong requested and was granted an extension of time to file his appellate brief, which he filed on January 9, 2007 [Exs. 71-74], and the BIA issued its decision fifteen days later, on January 24, 2007. [Exs. 75-76.] On January 25, 2007, DHS requested a travel document from the Chinese government, which issued the travel document on March 6, 2007. [Exs. 77-78, 81.]

1    On February 8, 2007, fifteen days after the BIA's decision, Yong filed his petition
2 for review and requested a stay of removal pending such petition for review, resulting
3 in an automatic temporary stay of removal. [Exs. 79, 93.] On June 5, 2007, the Ninth
4 Circuit granted the unopposed request for stay of removal. [Ex. 94.]

5    On August 1, 2007, the Ninth Circuit issued a briefing schedule, requiring Yong
6 to file his opening brief by October 15, 2007. [Ex. 94.] Thereafter, Yong requested and
7 was granted <u>four</u> extensions of time to file his opening brief. [Exs. 94-95.] The first
8 three were granted before Yong filed the instant January 3, 2008 Petition, in which he
9 informed this Court that his opening brief was due to the Ninth Circuit on January 18,
10 2008. [Pet. P&A at 2.] Since then, he has made an additional request for extension of
11 time to file the opening brief, which is now due on February 18, 2008. [Ex. 95.]

12                                              III
13                                        <u>ARGUMENT</u>
14    A.    <u>YONG'S DETENTION IS VOLUNTARY</u>

15    Without even reaching the fact that Yong has been the cause of all delays pending
16 his removal proceedings and judicial review, his Petition should be dismissed because
17 his detention is voluntary. The Ninth Circuit recently stated that a petitioner is being
18 "voluntarily detained" pending judicial review of a final removal order when he requests
19 and obtains a stay of removal. <u>Cruz-Ortiz</u>, 2007 WL 580670 at *1 ("appellant is being
20 voluntarily detained--upon his requested stay of removal--pending appeal of his final
21 removal order").

22    Detention is voluntary because a petitioner may choose to prosecute the petition
23 for review from outside the United States. Removal or other departure from the United
24 States does not constitute abandonment of the appeal or otherwise render the appeal
25 moot. <u>See</u> 8 U.S.C. § 1252(b)(3)(B) & (b)(8)(C); <u>Elian v. Ashcroft</u>, 370 F.3d 897, 900
26 (9th Cir. 2004) ("We may entertain a petition after the alien has departed"); <u>Zazueta-</u>
27 <u>Carrillo v. Ashcroft</u>, 322 F.3d 1166, 1171 (9th Cir. 2003) (even though a petition for
28 review is filed, INS may remove the petitioner without delay after an unfavorable BIA
decision, and the petitioner may continue the case from abroad); <u>Andreiu v. Ashcroft</u>,

253 F.3d 477 (9th Cir. 2001) ("Our decision to deny the stay, of course, is not a decision on the merits of Andreiu's petition for review, and nothing we hold today is meant to prejudice Andreiu's ability to advance any of the claims asserted for review in subsequent proceedings").

The Ninth Circuit's view in Cruz-Ortiz is consistent with its decisions in Tijani and Nadarajah, because an alien may not pursue a defense from outside the United States during administrative proceedings. Thus, the Ninth Circuit ruled in those cases that it is unreasonable to continue to detain an alien pursuant to mandatory detention provisions during extraordinary delays in administrative proceedings. However, the Ninth Circuit recognized in Cruz-Ortiz that a petitioner is statutorily permitted to pursue his petition for review of a removal order from outside the United States and, therefore, the detention is attributable to the petitioner, not to DHS.

Moreover, decisions from this district have recognized that detention is voluntary pending judicial review. In Valdez v. Chertoff, No. 06cv2184-JAH, slip op. at 4-5 (S.D. Cal. Aug. 22, 2007) [copy attached], Judge Houston ruled that a petitioner's detention is voluntary pending judicial review where the continued detention is a direct result of the petitioner's own choice to remain in custody rather than pursue an appeal from abroad. Id.; see also Arteaga v. Gonzales, No. 07cv1626-BEN, slip op. at 3-5 (S.D. Cal. Nov. 13, 2007) [copy attached] (holding that petitioner's detention is voluntary pending resolution of his or her petition for review at the Ninth Circuit).

Yong has not presented any evidence that he cannot pursue his petition for review from his home country of China or from a third country. On the contrary, Yong has stated that he has no fear of returning to China,[2/] and he has traveled several times to Colombia for months at a time. [Ex. 45.]

///

///

---

[2/] See Exs. 4 ("Subject claimed no fear of returning to his country") and 65 ("He indicated that he had no fear of returning to China if that was the Court's order, and he, likewise, had no reason to believe that he would be subjected to torture if returned to China").

1  It is anticipated that Yong will assert that the Government is somehow estopped
2  from raising the defense of voluntariness in this habeas action due to its decision not to
3  oppose Yong's request for stay of removal in his petition for review proceedings. [See
4  Pet. at 2:9.] There would be no basis for such an assertion because the Government's
5  litigation decision not to respond to the stay request (which can be based on a number
6  of factors unrelated to the merits of the petition) in no way constituted misconduct and
7  in no way induced Yong to make the request in the first place. See, e.g., Morgan v.
8  Gonzales, 495 F.3d 1084, 1092 (9th Cir. 2007).[3/] Likewise, the Government's decision
9  not to oppose Yong's eight requests for extensions of time in his administrative and
10 judicial proceedings in no way constitutes a factual basis for asserting estoppel against
11 the Government. In sum, Yong's detention pending judicial review is voluntary, so he
12 is not entitled to habeas relief.

13  B.  **FAILURE TO STATE A FACTUAL OR LEGAL BASIS FOR RELEASE**

14  Apart from the fact that Yong's detention is voluntary for the reasons set forth
15 above, the Petition should be summarily denied because there is no factual or legal basis
16 for seeking release under Zadvydas, Tijani and/or Nadarajah.

17  1.  Inapplicability of *Zadvydas*

18  Yong, through counsel, repeatedly invokes the Supreme Court's decision in
19 Zadvydas in support of his argument that he should be released. Zadvydas is not
20 applicable to this case because it concerned aliens who were under final order of removal
21 for whom the removal period had elapsed and for whom repatriation was not politically
22 possible for an unknown period of time for reasons beyond the control of the parties and

---

[3/]  A party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability. . . . When estoppel is available, the court then considers its traditional elements, which include that "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Id. at 1092 (quoting Watkins v. U.S. Army, 875 F.2d 699, 707 (9th Cir. 1989) (en banc)).

the judiciary. In this case, the removal period has not elapsed, DHS has already obtained a travel document from China for Yong's repatriation, and the duration of judicial review is neither indefinite nor beyond the control of the parties and the judiciary.

In Zadvydas, the Court stated that, generally, a presumptively reasonable period of detention would be six months after the removal period commences. Id. at 680. Yong's removal period was interrupted when Yong fled his petition for review and accompanying request for stay of removal, and the period will not re-commence until either Yong's petition for review is decided or his stay of removal is vacated. See 8 U.S.C. § 1231(a)(1)(B).

Furthermore, Zadvydas concerned indefiniteness due to political obstacles over which neither the parties nor the judiciary had any control, namely the inability to obtain travel documents from any foreign country for the removal of Ma and Zadvydas. By contrast, DHS has been able to obtain a travel document from the Chinese government for Yong's repatriation [Ex. 81], and Yong's petition for review proceedings have, as a matter of law, a definite termination point that is within the control of the parties and the judiciary. See Zadvydas at 697 ("detention pending a determination of removability . . . has [an] obvious termination point"). See also Hussain v. Mukasey, 510 F.3d 739, 743 (7th Cir. 2007) (detention prior to the initiation of removal under Section 1231(a)(2), including pending judicial review, is not indefinite); Soberanes v. Comfort, 388 F.3d 1305, 1311 (10th Cir. 2004) ("detention is clearly neither indefinite nor potentially permanent . . . it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point"); Verdugo-Gonzalez v. Ridge, No.07cv0402-LAB, 2008 WL 170018 at *3 (S.D. Cal. Jan. 17, 2008) ("Unlike in *Zadvydas*, he raises no issue associated with any impediment to his ultimate removal should he not prevail in the Ninth Circuit"); Arteaga, No. 06cv1626-BEN, slip op. at 6-7 (detention pending judicial review is not indefinite because once the Ninth Circuit issues a decision, the petitioner will either be released or removed) [copy attached]; Mboussi-Ona v. Crawford, No. 06-02897-PHX-NVW, 2007 WL 3026946 (D. Ariz. Sept. 27, 2007) (Tijani does not apply where detention is a result of normal judicial appeal time);

Supnet v. Gonzales, No. 06cv2189-JAH, slip op. at 3-4 (S.D. Cal. Aug. 29, 2007) (same) [copy attached]; Middleton v. Clark, No. C06-1324RSM, 2007 WL 1031725 at *6-7 (W.D. Wash., Apr. 2, 2007) (same).

In Mboussi-Ona v. Crawford, the district court reasoned that the Tijani "expedited" standard cannot apply where the administrative proceedings were reasonable and any continued detention is a result of "normal judicial appeal time":

> If the Tijani gloss applies in this manner, then every judicial appeal will exceed this "expedited" standard. This would mean that by merely seeking judicial review, every alien found removable would be entitled to an individualized bond hearing and possible release. . . A rule creating a universal right to an individualized bond hearing merely by seeking judicial review would bring the art of delay to perfection.

Mboussi-Ona, 2007 WL 3026946 at *5.

Furthermore, Zadvydas does not apply because Yong's continued detention is authorized by 8 U.S.C. §1231(a)(1)(C), due to his own dilatory actions in Yong v. Gonzales, No. 07-70619, namely his application for a stay of removal and his numerous requests for extensions of time to file an opening brief:

(C) Suspension of period

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or <u>acts to prevent the alien's removal subject to an order of removal</u>.

Id. (emphasis added). See Pelich v. I.N.S., 329 F.3d 1057 (9th Cir. 2003).

Courts have consistently recognized that litigation efforts that stymie removal efforts toll the permissible detention periods set forth under Zadvydas. See, e.g., Guang v. I.N.S., 2005 WL 465436 (E.D.N.Y. Feb. 28, 2005) (rejecting application of Zadvydas where petitioner pursued litigation and stays with the administrative courts, Second Circuit, and district court and holding that his own actions of pursuing the stays resulted in his prolonged detention); see also Lawrence v. Gonzales, 446 F.3d 221, 227 (1st Cir. 2006) (rejecting Zadvydas claim because alien's "continued detention here occurred pursuant to his own procuring of stays incident to his legal challenges to the removal order . . ."); Abimbola v. Ridge, 2005 WL 588769 *2-3 (Mar. 7, 2005 D. Conn.) motion

for reconsideration denied, 2005 WL 2663075 (October 15, 2005), aff'd, 2006 WL 1408375 (2d Cir. May 18, 2006) (noting that "but for...[alien's] seeking and/or receiving numerous judicial stays and filing his numerous petitions for reconsideration and appeals,...[alien] could have been speedily deported...."). As the district court noted in Mboussi-Ona, a petitioner "cannot complain about delay from his own extensions." Mboussi-Ona, 2007 WL 3026946 at *5.

Yong should be equitably estopped from pursuing relief from delays that he himself has caused. The Supreme Court has recognized that the remedy of federal habeas is an equitable one that implicates sensitive federalism concerns. Sanders v. United States, 373 U.S. 1, 17 (1963) ("habeas corpus has traditionally been regarded as governed by equitable principles"), *overruled in part on other grounds*, McCleskey v. Zant, 499 U.S. 467 (1991); see also Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Fay v. Noia, 372 U.S. 391, 438 (1963). In Sanders, Justice Brennan stated that habeas corpus is governed by "the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks" and that the principle is to be "addressed to the sound discretion of the federal trial judges." Id. at 17-18.

Apart from whether Zadvydas applies, Yong has failed to demonstrate that his removal is not likely in the reasonably foreseeable future. The only evidence that Yong can present is the fact that he, himself, has been the source of all delay in his petition for review before the Ninth Circuit. As set forth above, DHS has already demonstrated that it can obtain a travel document from China for Yong's repatriation [Ex. 81], and judicial review has, as a matter of law, a definite termination point. The only obstacle to reaching that termination point has been Yong's own actions.

2. Inapplicability of *Tijani* and *Nadarajah*

Citing Tijani and Nadarajah, Yong contends that he should be released because, in all, he has been detained for over eighteen months. [Pet. P&A at 5.] Both of those cases concerned mandatory detention pending unduly prolonged administrative removal proceedings before the IJ and/or the BIA. Yong does not allege that his administrative proceedings before either the IJ or the BIA were unduly prolonged, he does not blame

Respondents for the length of duration of his proceedings before the Ninth Circuit, and he does not volunteer the reasons for the length of his detention. As explained above, Yong has made, in all, <u>eight</u> requests for continuance in his removal proceedings and before the Ninth Circuit. Clearly his own actions and inactions have resulted in prolongation of his detention.

In fact, the length of Yong's proceedings before the IJ were not unusually prolonged, even without considering that he made three requests for continuance. <u>See Kim v. Demore</u>, 538 U.S. at 530-31 (noting that Kim "was detained for somewhat longer than the average [of 47 days], . . . but himself had requested a continuance of his removal proceedings"). The Supreme Court upheld the detention of Kim, <u>who was in custody for more than six months during his proceedings before the IJ.</u>[4/] Unlike Kim, Yong was detained pending proceedings before the IJ for only three months (from August 7 to October 25, 2006). Yong's proceedings before the BIA lasted less than three months. <u>See</u> <u>id.</u> at 529 (noting that the BIA "appeal takes an average of four months").

In addition, <u>Nadarajah</u> is clearly distinguishable from this case because the petitioner had been detained for five years, had never been ordered removed, and had "won relief at every administrative level . . . ." 443 F.3d at 1081. The Ninth Circuit held that it was unlikely that Nadarajah would be removed in the reasonably foreseeable future because he had "won at every administrative level . . . " and in so doing had "won relief denied 98% of [asylum] applicants . . . a powerful indication of the improbability of his foreseeable removal, by any objective measure." <u>Id.</u> Further, Nadarajah had received a withholding of removal order, which the government had not contested. <u>Id.</u> The Ninth Circuit ruled that, in such circumstances, "Nadarajah has established that there is no significant likelihood of his removal in the reasonably foreseeable future." <u>Id.</u> By contrast, Yong has failed to win relief at any level, and the only obstacle to his removal

---

[4/]    <u>See</u> <u>Kim v. Ziglar</u>, 276 F.3d 523, 526 (9th Cir. 2002) ("On August 10, 1999, after Kim had been in custody for six months, [when] the district court . . . ordered the INS to hold a bail hearing to determine Kim's risk of flight and dangerousness. In lieu of holding a bail hearing, the INS released Kim on a $5,000 bond"), <u>rev's sub nom</u> <u>Demore v. Kim</u>, 538 U.S. 510 (2003).

1  at this juncture are his decision to remain in the United States pending his petition for
2  review and his numerous requests for extensions of time to file an opening brief.
3      Tijani is also distinguishable from this case because Tijani had been detained
4  mandatorily for 21 months pending administrative proceedings and was not subject to
5  a final removal order at the time of oral argument before the Ninth Circuit.  By contrast,
6  Yong's administrative proceedings have been completed since January 24, 2007, and,
7  in all, lasted less than 6 months.  As explained above, the duration of Yong's
8  administrative proceedings is consistent with the duration of lawful detention
9  contemplated in the Kim case.

10                                    IV
11                         CONCLUSION
12      For the reasons set forth above, the Petition should be summarily denied.
13      DATED:   February 8, 2008        Respectfully submitted,
14                                        KAREN P. HEWITT
15                                        United States Attorney
16                                        s/ *Samuel W. Bettwy*
17                                        SAMUEL W. BETTWY
                                      Assistant U.S. Attorney
18                                        Attorneys for Respondents
19
20
21
22
23
24
25
26
27
28