1  **JANET C. TUNG**
   California State Bar No. 231682
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC**.
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   Telephone: (619) 234-8467
4  Janet_Tung@fd.org

5  Attorneys for CHEUK FUNG YONG

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10                         **(HONORABLE LARRY A. BURNS)**

11  CHEUK FUNG YONG,                    )    CASE NO. 08cv0007-LAB (WMC)
                                        )
12              Petitioner,             )
                                        )
13  v.                                  )    **TRAVERSE**
                                        )
14                                      )
    MICHAEL CHERTOFF, et al.,           )
15                                      )
                                        )
16              Respondents.            )
    _____ )

17

18                               **INTRODUCTION**

19          Mr. Yong has been detained in immigration custody, awaiting the final outcome of his

20  removal proceedings, for nineteen months.  Yet, Mr. Yong's detention "is not the result of a criminal

21  conviction; nor is it because he faces imminent removal."  See Tijani v. Willis, 430 F.3d 1241, 1243 (9th

22  Cir. 2005) (Tashima, J., concurring).  Just like the petitioner whose writ of habeas corpus the Ninth Circuit

23  granted in Tijani, "[t]he only reason that [Mr. Yong] is being detained is because the government *may* be

24  able to prove he is subject to removal."  Id.  Finality in Mr. Yong's immigration case, which is not yet fully

25  briefed, is at least several months away.  As Mr. Yong argued in his habeas petition, his continued detention

26  is unauthorized by law and violates due process as set forth in Tijani and Nadarajah v. Gonzales, 443 F.3d

27  1069 (9th Cir. 2006).  Mr. Yong's removal is not reasonably foreseeable.  Zadvydas v. Davis, 533 U.S. 678,

28  689 (2001), and its progeny thus command his release.

                                          1

1   Respondent's attempts to avoid application of these controlling cases and their constitutional

2   foundations are unavailing. In the return, Respondents spend much time assigning blame to others, even

3   suggesting without factual support that Mr. Yong has engaged in bad faith delay tactics, for time spent on

4   *adjudication* of Mr. Yong's removal proceedings—without owning up to the inescapable fact that

5   Respondents alone are responsible for Mr. Yong's *detention*. These various finger-pointing "delay"-type

6   arguments fail for the obvious reason that they miss the point of Mr. Yong's habeas petition, which seeks

7   release from prolonged detention, not expedited consideration of his immigration matters. See Petition at

8   9 (requesting relief from custody). Respondents' related argument that Mr. Yong is "voluntarily detained"

9   because he "may choose to prosecute the petition for review from outside the United States," Return at 3,

10  likewise fails because the federal regulations prevent Mr. Yong from obtaining ultimate relief upon remand

11  should he leave the United States. Respondents' suggestion that Mr. Yong has acted for the sole purpose

12  of delay is entirely baseless and without one shred of factual support, as is evident from the fact that they

13  do not dispute that there exists a "substantial" basis for Mr. Yong's petition for review.

14  **FACTUAL AND PROCEDURAL BACKGROUND**[1]

15  Mr. Yong, a 39-year old Hong Kong native and citizen of China, has lived in the United

16  States since his admission as a lawful permanent resident in 1978. On July 21, 2006, immigration officials

17  served Mr. Yong with a notice indicating that he would be detained in immigration custody "pending a final

18  determination by the immigration judge in your case, and in the event you are ordered removed from the

19  United States, until you are taken into custody for removal." See Gov. Return Exh. at 51 (Notice of Custody

20  Determination dated 7/17/2006) (Docket No. 8-2 at 52). Aside from a reference to "section 236 of the

21  Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations," no reasons for

22  detention were given. Shortly thereafter, on August 7, 2006, without any sort of bond hearing, Mr. Yong

23  was put into immigration detention, where he has remained for nineteen months.

24  //

25  //

26  ────────────────

27  [1]Mr. Yong incorporates by reference the factual background set forth in his petition, but provides
    here additional facts made available through A-file discovery provided by Respondents in the course of this
28  action.

**Immigration Proceedings**

On July 21, 2006, the same day Mr. Yong received the notice of detention, ICE served him with a Notice to Appear (NTA). See Ret. Exh. at 49-50. Upon service, Mr. Yong requested a prompt immigration hearing by signing and dating the portion of the NTA containing the statement: "To expedite a determination in my case, I request an immediate hearing. I waive my right to have a 10-day period prior to appearing before an immigration judge." Id. at 50. Mr. Yong first appeared at a group hearing on July 27, 2006, and then again in several subsequent hearings as he attempted to obtain representation. See Appendix A (partial transcript of July 27, 2006 hearing); Appendix B (August 16, 2006 hearing); Appendix C (September 6, 2006 hearing); Appendix D (September 27, 2006 hearing). On October 25, 2006, having still been unable to obtain representation, Mr. Yong proceeded with the hearing *pro se*. See Appendix E (partial transcript of hearing).

On October 25, 2006, at the conclusion of the *pro se* proceeding, the immigration judge (IJ) ordered Mr. Yong removed to China. The immigration judge found that Mr. Yong had been convicted in 2005 of violating California Health and Safety Code section 11379(a) (sale or transportation of a controlled substance). See Ret. Exh. at 65. On the basis of this conviction, the IJ found Mr. Yong removable for having been convicted of an offense "relating to a controlled substance as defined in section 102 of the Controlled Substances Act [21 U.S.C. § 802]." See Ret. Exh. at 49 (charging document), 65-66. The IJ also found that Mr. Yong had been convicted in 2000 for possession for sale of a controlled substance in violation of California Health & Safety Code section 11378, which the IJ determined to be categorically an aggravated felony. Id.

Almost two months later, on December 18, 2006, Mr. Yong received the transcripts and briefing schedule necessary to pursue his appeal to the Board of Immigration Appeals (BIA). See Appendix F (Request for Extension). Still proceeding *pro se*, with the assistance of a fellow detainee, Mr. Yong sought an extension of the January 5, 2007, due date to review the transcripts and research the issues for his appeal. See id. The BIA granted a three-week extension to January 26. Ret. Exh. at 73. Instead of using the entire period of additional time he was granted, Mr. Yong filed his BIA appeal on January 9—just four days after it was originally due. See id. at 69. The BIA summarily dismissed his appeal on January 24, 2007.

1  //

2      After the IJ's removal decision, but before the BIA's summary affirmance, the Ninth Circuit

3  issued an opinion holding that California Health and Safety Code section 11377—a provision covering

4  almost the identical controlled substances as sections 11378 and 11379, the bases for the IJ's removability

5  finding and denial of eligibility for relief as to Mr. Yong—was categorically overbroad for the purpose of

6  establishing removability because "California law regulates the possession and sale of numerous substances

7  that are not similarly regulated by the [federal Controlled Substances Act]." Ruiz-Vidal v. Gonzales, 473

8  F.3d 1072, 1078 (9th Cir. Jan. 18, 2007).

9      On February 8, 2007, Mr. Yong petitioned the Ninth Circuit for review of the BIA's decision.

10  See Appendix G (Docket in Case No. 07-70619, as of Mar. 8, 2008). He filed a motion to stay deportation

11  and requested appointed of counsel on the same day. Id. The government filed no response to the motion

12  to stay. On June 5, the Ninth Circuit granted Mr. Yong's motion for appointment of counsel, stayed the

13  petition pending, and ordered a temporary stay of removal to remain in effect until further order of the court.

14  Id. On August 10, the Court appointed Kathryn Davis as Mr. Yong's pro bono counsel, and set a briefing

15  schedule ordering the opening brief to be filed by October 15, 2007. Id. Since that date, the Ninth Circuit

16  granted the time extensions requested by counsel, resulting in a March 5, 2008, due date for the opening

17  brief, and the opening brief has been filed. See id.[2] In his petition for review, Mr. Yong has challenged the

18  immigration judge's removability determination and his denial of eligibility for relief on aggravated felony

19  grounds. One of the arguments he has raised is that, without the benefit of Ruiz-Vidal, the IJ incorrectly

20  applied the categorical approach to the section 11378 and 11379 convictions; after the Ninth Circuit issued

21  its decision in Ruiz-Vidal, Mr. Yong's petition is highly likely to be granted and the order either remanded

22  or vacated.

23  **Respondent's Detention of Mr. Yong**

24      During the nineteen months Mr. Yong has been detained in Respondents' custody, he has

25  not been afforded a bond hearing before any judicial or quasi-judicial officer. Respondents have never

26

27      [2]An additional motion for an extension was filed and granted in the Ninth Circuit case after the
28  government filed its return in this case, bringing the total number of extensions to five.

1    established to an immigration judge or Article III judge that Mr. Yong poses a flight risk or a danger to the

2    community. Review of discovery provided by Respondents in this action revealed no additional detention

3    reviews by ICE besides the May 7, 2007 decision identified in Mr. Yong's habeas petition. <u>See</u> Petition at

4    3 & Exh. A. Respondents do not claim in their return that any other reviews have been conducted; nor do

5    they claim at any time to have provided Mr. Yong a bond hearing, constitutionally adequate or otherwise.

6    **Habeas Proceedings**

7         Mr. Yong initiated the instant proceedings by filing a petition for writ of habeas corpus with

8    this Court on January 3, 2008, seeking release from unlawful and excessive administrative custody, pursuant

9    to 28 U.S.C. § 2241. On January 17, 2008, this Court issued to Respondents an Order to Show Cause why

10   the writ should not be granted and ordered a written return to be filed by February 8, 2008. The government

11   filed its return on that date. In its return, the government responded to Mr. Yong's arguments under <u>Tijani</u>,

12   <u>Nadarajah,</u> and <u>Zadvydas</u> largely by asserting that these cases were "distinguishable" because of a claimed

13   difference in whether administrative proceedings were pending at the time of appellate court review, and

14   arguing that Mr. Yong's detention is "voluntary" because he elected to challenge the removal order and

15   sought a stay of removal. It also contended that the good faith efforts of the pro bono immigration attorney

16   appointed by the Ninth Circuit to litigate Mr. Yong's petition for review amount to "conspir[ing] or act[ing]

17   to prevent the alien's removal" analogous to the malfeasance of the petitioner in <u>Pelich v. INS</u>, 329 F.3d

18   1057 (9th Cir. 2003) (petitioner refused to fill out the application forms necessary to effect his removal and

19   lied about his name, birthplace, and nationality, as well as his parents' names, birthplaces, and residences).

20        Respondents do not dispute in their return that they—and no one else—are responsible for

21   detaining Mr. Yong. Neither do they dispute that Mr. Yong, like the petitioners in <u>Tijani</u> and <u>Nadarajah</u>,

22   has been subjected to prolonged civil detention. <u>See</u> Return at 8-9 (claiming only that the detention period

23   while the "*proceedings [were] before the IJ*" was "not unusually prolonged") (emphasis added). Nor do

24   Respondents dispute that Mr. Yong has a substantial claim for relief in his underlying immigration case or

25   the fact that he has a legal right to seek judicial review of the administrative removal decision, a normal

26   event in the course of immigration proceedings. <u>See</u> <u>generally</u> Return. The return instead devotes much

27   text to assigning blame to others, primarily Mr. Yong, for the time taken to effectuate each step in the

28   removal proceedings—without explaining what relevance the time for litigation and adjudication in the

1  ordinary course of immigration proceedings has on the fact that Respondents, and Respondents alone, hold

2  the key to Mr. Yong's cell door.  <u>See</u>, <u>e.g.</u>, Return at 8 (arguing that Mr. Yong should be "equitably

3  estopped" from seeking relief from his unlawful detention because "he, himself, has been the source of all

4  delay in his petition for review before the Ninth Circuit").

5                                        **ARGUMENT**

6                                           **I.**

7  **THE EXCESSIVE DETENTION OF MR. YONG HAS EXCEEDED THE SIX-MONTH**
   **PRESUMPTIVELY REASONABLE PERIOD BY OVER FOUR TIMES AND CONTINUED**
8  **DETENTION VIOLATES HIS DUE PROCESS RIGHTS**

9              Respondents's claims that Mr. Yong does not qualify for relief under <u>Tijani</u>, <u>Nadarajah</u>, or

10 <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), are without merit.  Mr. Yong has shown that he comes squarely

11 within the scope of these cases, and Respondents' arguments based on non-existent distinctions between

12 the instant case and controlling precedent of the Ninth Circuit fails.  Nowhere in <u>Tijani</u> or <u>Nadarajah</u> does

13 the Ninth Circuit express the narrow limitations respondents discern, distinguishing types of reviewing fora,

14 pre- and post-final-order status, and different subsections of detention statutes[3] as bases for denying relief.[4]

15 To the contrary, Mr. Yong's case is fully analogous to <u>Tijani</u> and <u>Nadarajah</u>.  <u>See</u> Petition at 4-9.

16 Respondents' claim that Mr. Yong's legitimate efforts to challenge the legality of his removal order amounts

17 to bad faith tactics to avoid the inevitable, as in <u>Pelich</u>, lacks support in the law—and, indeed, fails even

18 taken on its own face because Respondents make no claim that Mr. Yong has taken any frivolous action in

19 the Ninth Circuit or anywhere else.

20

21  ―――――――――――

22      [3]Respondents apparently now claim detention authority under 8 U.S.C. § 1231(a), <u>see</u> Ret. at 7,
    despite the obvious inapplicability of that statute and their previous position in analogous cases renouncing
23  precisely that claim.

24      [4]Respondents' crabbed interpretation of the scope of the case law harkens back to Justice Rutledge's
    prescient dissent in <u>Aherns v. Clark</u>, 335 U.S. 188 (1948), arguing against the overtechnical, jurisdictional
25  narrowing of "the writ's great office in the vindication of personal liberty" created by the majority.  <u>Id</u>. at
    194 (Rutledge, J., dissenting).  As in <u>Aherns</u>, Respondents' focus on insubstantial and chimerical
26  distinctions "gives controlling effect to a factor which generally has been regarded as of little or no
    importance for . . . the functioning of the writ in its great office as historically conceived."  <u>Id</u>. at 196.
27  Justice Rutledge's arguments against such a constricted view of the writ were vindicated a quarter century
    later in <u>Braden v. 30th Judicial Circuit  Court of Ky.</u>, 410 U.S. 484, 494 (1973).
28

Respondents' undisputedly prolonged detention of Mr. Yong violates controlling Supreme Court and Ninth Circuit law. <u>Tijani</u> and <u>Nadarajah</u> make clear that the point of analysis is the fact of excessive detention pending the outcome of immigration proceedings—regardless of whether they are labeled administrative, judicial, or some other thing—not, as Respondents suggest, only detention "pending unduly administrative removal proceedings." <u>Compare</u> <u>Tijani</u>, 430 F.3d at 1242 (holding that "two years and eight months" was excessive, without parsing out how much of that time was spent mired in administrative proceedings), <u>and</u> <u>Nadarajah</u>, 443 F.3d at 1079-80 (concluding that "length of detention in this case has been unreasonable" without regard to whether Nadarajah had a case pending in a judicial or quasi-judicial forum), <u>with</u> Return at 8.

Indeed, the precise argument advanced here by Respondents has been soundly rejected in a published decision from this district. <u>See</u> <u>Judulang v. Gonzales</u>, – F. Supp. 2d –, 2008 WL 410684 (S.D. Cal. Feb. 18, 2008). In <u>Judulang</u>, Judge Gonzales surveyed the cases, which are split on this question. <u>See</u> <u>id.</u> at *3 & nn.5 & 6. Judge Gonzales observed that while some district courts have, as the government here urges, "limited <i>Tijani</i>'s application to cases in which the unreasonably long detention occurred primarily during administrative proceedings, rather than during an appeal by the detainee by the Ninth Circuit," the better analysis lies with those that reached the opposite result. <u>See</u> <u>id.</u> ("This Court therefore agrees with the other district courts which have included time detained pending judicial review in assesing the reasonableness of a prolonged detention."); <u>see</u> <u>also</u> <u>Mustanich v. Gonzales</u>, No. 07cv1100-WQH (LSP), 2007 WL 2819732 (S.D. Cal. 2007) (unpublished) ("This Court finds unpersuasive Respondents' argument that because Petitioner appealed to the Court of Appeals for the Ninth Circuit and sought a stay of removal, the period of Petitioner's detention which accrue pending judicial review should not be considered.").

As Judge Gonzales recognized in <u>Judulang</u>, <u>Tijani</u> expressly considered as part of the "foreseeable process" the time the Ninth Circuit would take to consider his petition for review. <u>See</u> <u>Tijani</u>, 430 F.3d at 1242 ("[T]he foreseeable process in this court, where the government's brief in Tijani's appeal of the removal was only filed last month after two extensions of time, is a year or more."); <u>Judulang</u>, 2008 WL 410684, at *3; <u>see</u> <u>also</u> <u>Mustanich</u>, 2007 WL 2819732, at *8. <u>Nadarajah</u> likewise held that the relevant consideration on a detainee's due process challenge under <u>Zadvydas</u> was whether removal was "reasonably foreseeable"—not whether a period of detention, admittedly far in excess of the six-month presumptively

1  reasonable period, could somehow escape the Zadvydas rule and the protections of the due process clause

2  because the detainee chose to seek judicial review.  443 F.3d at 1078; see also Oyedeji v. Ashcroft, 332 F.

3  Supp. 2d 747, 752 (M.D. Pa. 2004) (rejecting the argument that Zadvydas "is limited to those aliens for

4  whom no stay of removal is in place and the presumptive period for removal has expired").

5          That the correct focus under these cases should be on the "length of detention" is obvious

6  for several reasons.  Most fundamentally, at bottom the issue is the individual's constitutional right not to

7  be deprived of "liberty" under the Due Process Clause—which concerns itself with the length of deprivation

8  of liberty, not the executive branch's adeptness at finger-pointing.  See Nadarajah, 443 F.3d at 1077

9  (explaining the Zadvydas decision as governed by the principle of constitutional avoidance, and concluding

10  that consistent application of the Supreme Court's rule of law required granting petitioner's writ); cf. U.S.

11  Const., amend. V.  As the Oyedeji court explained: "The price for securing a stay of removal should not be

12  continuing incarceration."  Oyedeji, 332 F. Supp. 2d at 753 ("An alien who would not normally be subject

13  to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the

14  law makes available to him.  Further, although an alien may be responsible for seeking relief, he is not

15  responsible for the amount of time that such determinations take.").

16          Additionally, the position advanced by Respondents makes no sense because it would set as

17  a threshold requirement of the due process *liberty* inquiry a factual predicate that bears no relationship to

18  the fact or nature of detention at all.  Whether Mr. Yong has a pending case before an immigration court,

19  an Article III court, both, or none at all simply does not change the color, shape, or material of the bars on

20  his cell door.  Thus, Respondents' claim that Nadarajah and Tijani do not apply because they "concerned

21  mandatory detention pending prolonged administrative removal proceedings," Return at 8 (emphasis in

22  original), makes no sense.  As far as the Constitution is concerned, *any form* of government detention works

23  a deprivation of liberty.  See Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment – from government

24  custody, detention, or other forms of physical restraint – lies at the heart of the liberty that the Clause

25  protects.").    Put another way, Mr. Yong is no less deprived of liberty if his case is before an Article III

26  court than an administrative court.  Id.  Likewise, the government actors responsible for his detention do

27  not change their identity based on the status of his administrative or judicial proceedings.  See Tijani, 430

28  F.3d at 1247 n.7 (Tashima, J., concurring) ("The BIA's . . . decision finding Tijani removable did not change

1   Tijani's position in this appeal. Tijani continues to remain in BICE custody, detained without the possibility

2   of release under § 236(c) of the INA.").  In short, regardless of the posture of Mr. Yong's separate

3   immigration case, Respondents—and Respondents only—have caused him to remain in indefinite custody.

4       Respondents' arguments that <u>Tijani</u> and <u>Nadarajah</u> are "distinguishable" on the basis of

5   irrelevant details such as exactly how many months the administrative proceedings lasted or whether "a final

6   removal order" existed "at the time of oral argument" in the habeas appeal, boil down to an attempt to limit

7   those cases to their precise facts.  <u>See</u> Return at 10.[5]  This argument has been soundly rejected in a recent

8   published opinion in the Central District.  <u>See</u> <u>Martinez v. Gonzales</u>, 504  F. Supp. 2d 887, 896 (C.D. Cal.

9   2007).  <u>Martinez</u> responded to arguments raised by the government effectively identical to the ones it makes

10  here:

11          The government contends that *Nadarajah* does not control because it is limited to its
            facts or its facts are distinguishable, and because it arose under a different detention
12          statute. . . . The Ninth Circuit did not limit its holding in *Nadarajah* to the facts of
            that case or otherwise indicate that it was crafting a rule of limited application
13          because of the relatively unusual posture of the petitioner's application for relief
            from removal.

14

15  <u>Id.</u>  Rejecting the government's arguments, <u>Martinez</u> explained that the holding of <u>Nadarajah</u> set forth due

16  process principles that extend beyond the precise facts of that case: "[The Ninth Circuit] relied upon

17  principles of statutory construction in light of existing Supreme Court authority to hold that the 'general

18  immigration detention statutes' do not authorize indefinite detention, and that an alien detained under those

19  statutes beyond the presumptively reasonable six-month period is entitled to release with appropriate

20  conditions when the government does not rebut the alien's showing that his removal is not reasonably

21  foreseeable."  <u>Id.</u>

22       <u>Martinez</u>'s explanation makes plain a fundamental flaw in Respondents' argument that only

23  detention pending the resolution of administrative proceedings triggers the constitutional problems present

24  ─────────────────────

25      [5]Respondents' assertion that Tijani "was not subject to a final removal order at the time of oral
    argument [in the habeas case] before the Ninth Circuit," aside from having no legal relevance, is also

26  factually incorrect.  The referenced "oral argument," in <u>Tijani v. Willis</u>, Case No. 04-55285, occurred on
    January 10, 2005.  On that date, the Petitioner's removal order had become administratively final, but he

27  had not yet moved for a stay of removal in the Ninth Circuit, in Case No. 05-70195.  His removal order, thus
    was, in fact, final for the few days—which included Respondents' touted date of "oral argument"—before

28  removal was stayed by operation of Ninth Circuit General Order 6.4(c)(1)(3).  <u>See</u> 8 U.S.C. § 1231(a)(1)(B).

1   in <u>Tijani</u>, <u>Nadarajah</u>, and <u>Zadvydas</u>.  <u>See</u> Return at 8-9.  Whether Mr. Yong's removal proceedings are

2   presently on appeal to an administrative board, judicial panel, or some other entity, makes no difference to

3   the applicability of those cases.   No matter what the precise procedural posture of the immigration

4   matter—or, for that matter, which statutory provision Respondents claim to authorize their detention—the

5   undisputedly prolonged detention of Mr. Yong runs afoul of due process.  <u>See</u> <u>Tijani</u>, 430 F.3d at 1242

6   (construing 8 U.S.C. § 1226(c) in accordance with constitutional avoidance principles); <u>see</u> <u>also</u> <u>Nadarajah</u>,

7   443 F.3d at 1076-77 (due process limits the length of detention imposed under color of "the general

8   immigration statutes[,] 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A)").   Regardless of what forum

9   Mr. Yong's separate immigration case has stalled out in, the result here is the same: "consistent with the

10  Supreme Court's approach in *Zadvydas*, . . . the statutes at issue permit detention only while removal

11  remains reasonably foreseeable." <u>Id.</u> at 1077.  Here, because the "presumptively reasonable six-month

12  detention" is long gone, and because Mr. Yong's successful showing that "there is no significant likelihood

13  of removal in the reasonably foreseeable future" due to the ongoing judicial proceedings has not been

14  rebutted by the government, he is entitled to release.  <u>See</u> <u>id.</u>

## II.

### MR. YONG DID NOT "VOLUNTARILY" SUBJECT HIMSELF TO DETENTION

17          Mr. Yong is being detained against his will.  Respondent's suggestion that Mr. Yong has,

18  in effect, chosen to remain behind bars because he sought a stay of removal is utterly baseless.  <u>See</u> Return

19  at 3, 7 (accusing Mr. Yong of engaging in "dilatory actions" by filing "an application for a stay of removal

20  and . . . numerous requests for extensions of time to file an opening brief" and arguing that Mr. Yong should

21  "choose to prosecute the petition for review outside the United States").  The claim that Mr. Yong has

22  somehow decided to remain in custody certainly comes as news to him, and, moreover, defies logic.

23  Mr. Yong has made no such decision; he has sought and continues to seek release under supervision.

24  Respondents themselves admit that they are the ones who have decided to detain Mr. Yong.  <u>See</u>, <u>e.g.</u>,

25  Return at 2, 7 ("DHS . . . took Yong into custody" and believes its detention to be "authorized by 8 U.S.C.

26  § 1231(a)(1)(C)").  Respondents' arguments fail because Mr. Yong's Ninth Circuit litigation has been

27  conducted in good faith and raises a substantial question—and Respondents do not contend otherwise.  <u>See</u>

28  <u>Judulang</u>, 2008 WL 410684, at *3-4 (rejecting the government's "voluntary detention" argument).

//

**A.** **Mr. Yong's Good Faith Request For a Stay of Removal Was Necessary to Ensure Viability of His Case Upon Remand From the Ninth Circuit**

Two foundational concepts can be distilled from Respondents' insistence that Mr. Yong is to blame for the fact that Respondents have locked him up for over nineteen months: (1) Respondents believe that Mr. Yong should be forced to choose between submitting to administrative detention based on a decision made by a local, mid-level agency official and returning to a country he has not lived in for twenty-nine years, and where he will almost certainly suffer distinct procedural setbacks in his efforts to maintain status in the United States; and (2) Respondents believe that Mr. Yong should be forced to choose between such detention and litigating his good faith claims to relief through such actions as filing and pursuing an appeal—rights guaranteed to him by statute and, for that matter, the United States Constitution. Cf. U.S. Const., Article I, § 9, cl.2 (limiting the suspension of the writ of habeas corpus). Notably absent from the return, notwithstanding citation to various out-of-circuit, unpublished, and otherwise non-controlling law, is any citation to Tijani, Nadarajah, or for that matter, any Ninth Circuit or Supreme Court case that supports Respondent's contention that Mr. Yong's "Petition should be dismissed because . . . . a petitioner may choose to prosecute the petition for review from outside the United States." Ret. at 3.

The obvious fallacy to these "Hobson's choice" arguments is the same flaw that runs through the bulk of the return: they totally ignore the fact that it is ICE that has elected to continue Mr. Yong's detention. In reality, ICE may release him at any time on order of supervision. The way Respondents describe it, one would think Mr. Yong was offered a free choice between release and detention and chose custody. See Return at 9 ("Clearly his own actions and inactions have resulted in prolongation of his detention."). Respondents would hang the full weight of *their decision* to detain on Mr. Yong's shoulders. See Return at 10 ("The only apparent obstacle to Yong's repatriation has been his own actions.").[6]

---

[6]The government's various predictions that Mr. Yong might raise some sort of "estoppel" argument, Ret. at 5, and its own "estoppel" argument, Ret. at 8, should be disregarded as a distraction intended to confuse the issues. The driving purpose of this habeas matter is the unconstitutional prolonged *detention* of Mr. Yong by Respondents, not some collateral dispute the government hopes to raise concerning the stay of removal issued in his separate Ninth Circuit case.

The irony of Respondents' assertion is two-fold. First and foremost is the simple fact that the decision to continue detention is one solely in the discretion of respondents. There is no inconsistency between ICE's duty to remove deportable aliens and release pending removal, since federal regulations call for release on supervision precisely in such cases, and ICE supervises many thousands of aliens under these provisions. The choice to continue Mr. Yong's detention is not of his making, but Respondents'. Respondents' second error derives from the attempt to avoid the obvious point that Mr. Yong does not, in fact, control the length of his detention. Respondents argue that detention is "voluntary," because Mr. Yong has chosen to challenge his illegal deportation order and has sought to stay removal. According to Respondents, Mr. Yong has freely chosen to remain in detention, which is presented as the sole alternative if one challenges a deportation order and seeks a stay of removal. See, e.g., Return at 3 ("a petitioner may choose to prosecute the petition for review from outside the United States"). Respondents claim that Mr. Yong's only remedies are either (1) to quit exercising his statutory (and perhaps constitutional) right to judicial review of the administrative proceedings—Mr. Yong's Ninth Circuit proceedings are, in Respondents' eyes, little more than "litigation efforts that stymie removal efforts," Return at 7— or (2) to vacate the stay and "pursue his petition for review" from China. See Return at 3.

One problem with these suggestions has been recently articulated by the court in Martinez: "When an alien petitions for judicial review of a removal order, it is virtually certain that his or her appeal will delay removal by some period of time even if it does not succeed in preventing it, but to suggest that the petitioner therefore 'holds the keys' to his release from detention ignores the reality that the petitioner's conduct is merely one factor among many that affects the length of the judicial review process." 2005 WL 2402737 at *9. Of as much concern as Martinez's reality check on Respondents' arguments, however, is that their contention that the simple act of petitioning for review "stymies removal"—they make no claim that Mr. Yong's appellate issues are frivolous or otherwise without substance—reveals a dismayingly low regard for the value of judicial review. Tellingly, the return cites no support for its implicit disparagement of the statutory right to judicial review, see 8 U.S.C. § 1252, which may well take on constitutional proportions, see Magana-Pizano v. INS, 200 F.3d 603, 608 (9th Cir. 1999), or of the role of the federal judiciary. Indeed, perhaps most revealing of the weakness of Respondents' position lies in their claim that "[t]he only apparent obstacle to Yong's repatriation has been his own actions." Ret. at 10. What

1  Respondents lose sight of by presuming the rectitude of seeking "repatriation" is that, by engaging the

2  judicial review process, Mr. Yong is seeking to prevent an *unlawful* removal—that is, the purpose served

3  by the judicial review Respondents now characterize as an "obstacle" is to prevent *Respondents* from

4  breaking the immigration laws that protect Mr. Yong.

5         Even setting aside the remarkably dim view their premise takes of the process of judicial

6  review and Mr. Yong's right to pursue judicial review of the immigration agency's decision, Respondents'

7  argument is fallacious.  First, Respondents' proposal smacks of urging unconstitutional conditions on

8  seeking legal redress to a removal order.  Respondents claim that the price of Mr. Yong's liberty is to forego

9  any right of remaining in the United States to pursue his legal challenges.  However, the doctrine of

10 unconstitutional conditions "limits the government's ability to exact waivers of rights as a condition of

11 benefits, even when those benefits are fully discretionary."  United States v. Scott, 450 F.3d 863, 866 (9th

12 Cir. 2006).  Scott prohibited the government from conditioning pretrial release on a waiver of the need for

13 probable cause under the Fourth Amendment to conduct searches.  The Court held that even though release

14 prior to a criminal trial was discretionary, it could not be conditioned on foregoing the constitutional

15 requirement that all searches be reasonable.  See id. at 868.  In terms readily adaptable to civil detainees held

16 by ICE, Judge Kozinski observed:

17            It would be highly impractical and politically impossible for a state to jail all
             criminal defendants–including those accused of traffic offenses–pending trial
18            [or removal]. . . . The right to keep someone in jail does not in any way imply
             the right to release that person subject to unconstitutional conditions–such as
19            chopping off a finger or giving up one's first-born [or surrendering the right
             to remain in the country]. Once a state decides to release a criminal defendant
20            pending trial, the state may impose only such conditions as are constitutional
             . . . .

21

22 Id. at 464 n.5. Under the doctrine of unconstitutional conditions, once discretionary release is allowed to

23 anyone, as under § 1226(a), it cannot be conditioned on the detainee's abandonment of his right to remain

24 in the U.S.

25         Moreover, the observation that pursuing deportation challenges from abroad is legally

26 *permissible* is no recognition that the practical and legal hurdles entailed make such a condition highly

27 *unreasonable*.  Cf. Rivera v. Ashcroft, 394 F.3d 1129, 1140 (9th Cir. 2005) (putative citizen's ability to

28 apply for admission from abroad was inadequate relief compared to pre-deportation adjudication of his

1   citizenship claim).  Respondents' claim that Mr. Yong "may choose to prosecute the petition for review

2   from outside the United States" because "[r]emoval or other departure from the United States does not

3   constitute abandonment of the appeal or otherwise render the appeal moot," Ret. at 3, overlooks the fact that

4   Mr. Yong's physical removal *would* abrogate his chances of obtaining relief upon remand should his

5   petition for review succeed in the Ninth Circuit.  Should the Ninth Circuit uphold his challenge to the IJ's

6   ruling finding him ineligible for cancellation of removal, the appellate win would surely involve a remand

7   to the IJ for the exercise of discretion in the first instance.  Respondents offer no answer to the obvious

8   question raised by their own contention—what additional, and potentially insurmountable, procedural

9   hurdles Mr. Yong would face should his case be remanded to the administrative agency.  The answer lies

10  in the federal regulations: Mr. Yong would be out of luck because the administrative process stops when

11  an alien departs the country before its conclusion.  See 8 C.F.R. §§ 1003.2(d), 1003.3(e), & 1003.4 (attached

12  hereto as Appendix H).  The case law cited by Respondents here holds only that *judicial* review can proceed

13  while the alien is abroad.  Respondents' theory that Mr. Yong is "voluntarily detained" is therefore

14  inconsistent with the elaborate and well-used administrative procedure for post-order release and the

15  doctrine of unconstitutional conditions.  Their contention that Mr. Yong has spent the past nineteen months

16  locked up as a result of his "voluntary" "decision" asks this Court to turn a blind eye to law and reality.  Mr.

17  Yong is *in*voluntarily detained, and the result is irreparable harm from loss of his fundamental right to

18  liberty.

19           Finally, even on a theoretical level, the government's contention that Mr. Yong's detention

20  is "voluntary," which relies on a one-paragraph, unpublished memorandum decision in Cruz-Ortiz v.

21  Gonzales, 2007 WL 580670 (9th Cir. 2007) (unpublished), also fails.  Tijani makes clear that the petitioner's

22  motion for a stay of removal in order to litigate immigration claims in the Court of Appeals does not vitiate

23  his constitutional rights under Zadvydas and its progeny.  See Tijani, 430 F.3d at 1246 (Tashima, J.,

24  concurring) (just as in Mr. Yong's case, Tijani petitioned for review and the government "has not contested

25  his motion for a stay of removal pending review"); cf. Oyedeji, 332 F. Supp.2d at 755 ("While a stay of

26  removal may suspend the running of the removal period, it does not toll the clock on the life of a person held

27  in prison awaiting adjudication of the merits of his challenge to the validity of the removal order.").  The

28  government's argument has been squarely rejected in Judulang, 2008 WL 410684, at *3 & n.4, and Arevalo

1    v. Ashcroft, 260 F. Supp. 2d 347, 349 (D. Mass. 2003) (rejecting the government's argument that detention

2    was permissible because Ms. Arevalo "acted to prevent her removal by seeking a stay of deportation

3    pending her appeal before the Court of Appeals" where petitioner had "simply exercised her statutory rights

4    . . . ."). Cruz-Ortiz's contrary conclusory assertion that "appellant is being voluntarily detained –

5    upon his requested stay of removal" cannot overcome the reasoned analyses of these cases. It is, moreover,

6    unsupported by analysis and has no precedential value. See Ninth Circuit Rule 36-3 ("Unpublished

7    dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of

8    the case or rules of claim preclusion or issue preclusion"); cf. Patookas v. Teck Camino Metals, Ltd., 452

9    F.3d 1066, 1082 (9th Cir. 2006) ("Where it is clear that a statement is made casually and without analysis,

10   where the statement is uttered in passing without due consideration of the alternatives, or where it is merely

11   a prelude to another legal issue that commands the panel's full attention, it may be appropriate to re-visit

12   the issue in a later case.") (quotations omitted). In any event, that case was factually unlike Mr. Yong's

13   because the government there had made efforts to lawfully removal Cruz-Ortiz, and had in fact put him on

14   a bus, which was en route to Mexico when his attorneys filed an emergency petition for stay, which stopped

15   the bus. See Cruz-Ortiz v. Gonzales, Petitioner's Opening Brief, available at 2006 WL 2984729 (June 30,

16   2006).[7]

17         Cases the government cites in support of its "voluntary detention" argument, Guang v. INS,

18   2005 WL 465436 (E.D.N.Y. Feb. 28, 2005), Lawrence v. Gonzales, 446 F.3d 221 (1st Cir. 2006), and

19   Thelemaque v. Aschcroft, 363 F. Supp. 2d 198 (D. Conn. 2005), see Return at 10, are inapposite because

20   in those cases, the court denied the petitioner's immigration claims on the merits, so removal was in fact

21

22

23         [7]Respondents' citation to Abimbola v. Ridge, 2005 WL 588769 (March 7, 2005) (unpublished), is
24   likewise off-base. In Abimbola, the petitioner had thoroughly mucked up his own proceedings by filing four
     habeas petitions in two different districts and two petitions for review in two different circuits. Id. at *1.
25   Abimbola's result was based on the uniquely and unnecessarily complicated mess of Abimbola's own doing:
     "From the convoluted record before the Court, at least one fact is clear: Mr. Abimbola has sought and/or
26   received numerous judicial stays of his removal throughout his four years of filing petitions with the various
     courts mentioned above, and in so doing, he has single-handedly created a considerable degree of
27   uncertainty as to the existence and duration of judicial stays of his removal at any given moment in time."
28   Id. at *2.

1   imminent.[8] See Guang, 2005 WL 465436 at *3 (because "the Second Circuit has dismissed petitioner's last

2   outstanding appeal, there appears to be no barrier to his removal"); Lawrence, 446 F.3d at 227 (after

3   rejecting petitioner's claims for relief, observing that "Lawrence's removal, which - now that the current

4   litigation is resolved - is presumably imminent"); Thelemaque, 363 F. Supp. 2d at 219 ("[B]ecause the Court

5   denies Mr. Thelemaque's habeas petition based upon his CAT claim above, his removal is not merely

6   reasonably foreseeable, it is imminent.").[9]  Thus, these cases have no bearing on the instant action and

7   certainly do not overrule the authority of Zadvydas, Nadarajah, and Tijani or somehow lend the government

8   extra-statutory authority to detain Mr. Yong notwithstanding the constitutional due process right.  Cf.

9   Arevalo, 260 F. Supp. 2d at 349.

10  **B.          Legitimate Litigation Decisions Made By Counsel, Such as Seeking An Extension of
               Time, Do Not Amount to "Voluntary" Acquiescence to Prolonged Civil Detention**

11

12            Respondents' contentions that Mr. Yong's good faith litigation decisions amount to a

13  "voluntary" decision to permit them to detain him are meritless.  The "voluntariness" fiction Respondents

14  create in an attempt to avoid the application of Tijani and Nadarajah asks this Court, in essence, to apply

15  a presumption that Mr. Yong's appeal of the removal order is frivolous.  Cf. Tijani, 430 F.3d at 1247-48

16  (Tashima, J. concurring) (urging application of a "substantial argument" standard to safeguard against abuse

17  of the writ); Judulang, 2008 WL 410684, at *3-4 (explaining that concerns with "the potential for dilatory

18  tactics and frivolous appeals by detainees" are best addressed by the "substantial argument" standard urged

19  by Judge Tashima in his Tijiani concurrence).  This argument fails because the supposedly frivolous actions

20  labeled by Respondents as "dilatory" are *statutorily authorized, good faith* litigation decisions.

21

22

23

24    [8]This is also true of Abimbola v. Ridge, 2005 WL 588769.  See Abimbola v. Ashcroft, 378 F.3d 173
    (2d Cir. 2004) (denying relief from removal order).

25    [9]Prior to the REAL ID Act of 2005, Pub. L. 109-13, certain challenges to an order of removal could
26  be brought before a district court in a habeas petition.  After its enactment on May 11, 2005, however,
    district courts "no longer have habeas jurisdiction over such petitions."  Morgan v. Gonzales, 495 F.3d
27  1084, 1090 (9th Cir. 2007). Thus, it is no longer possible for a district court to be in the position of the court
    in Thelemaque, which was faced with the petitioner's immigration and habeas claims all in the same action.
28  See 363 F. Supp. 2d 198.

Tellingly, Respondents do not dispute that Mr. Yong's petition for review in the Ninth Circuit raises substantial questions of law; indeed, the Ninth Circuit's appointment of pro bono counsel for Mr. Yong and order staying removal are direct evidence that his claims are substantial. Instead, Respondents identify three types of decisions that it calls "dilatory actions" and equates with bad faith activity, see Ret. at 7: (1) Mr. Yong's decision to try to find a lawyer to assist him in his immigration proceedings; (2) Mr. Yong's decision to ensure the availability of ultimate relief from the administrative agency by seeking a stay of removal; and (3) the tactical decision of Mr. Yong's court-appointed attorney to spend more time preparing the opening brief before the Ninth Circuit. The obvious flaw in Respondents' position is, first and foremost, that every one of these actions are good faith, legitimate litigation decisions which Mr. Yong has a statutory, constitutional, and/or rule-based right to make—not, as Respondents suggest, see Ret. at 7, the type of bad faith activity undertaken by the petitioner in Pelich, who earned his place in indefinite detention by refusing to fill out application forms, and lying about his name, birthplace, and nationality, as well as his parents' names, birthplaces, and residences. See Pelich, 329 F.3d at 1059.

Mr. Yong's requests to the IJ for more time—the first type of actions Respondents accuse Mr. Yong of conducting for the purpose of delay, Ret. at 1—were for the purpose of seeking an attorney. Respondents' suggestion that these requests were somehow "dilatory" are entirely baseless. The right to counsel in immigration proceedings is one to which Mr. Yong is statutorily and constitutionally entitled. See Biwot v. Gonzales, 403 F.3d 1094 (9th Cir. 2005) ("The right to counsel in immigration proceedings is rooted in the Due Process Clause and codified at 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)."). The contention that Mr. Yong's attempt to exercise this right should cause him to forfeit his liberty interest in being free of prolonged detention simply has no foundation in logic or law. His request for a stay of removal, as discussed in Part A above, can no more be regarded as frivolous or dilatory.

Respondents' arguments are equally misplaced as to Mr. Yong's pro bono attorney's requests for extensions to file the Ninth Circuit opening brief. Respondents make no claim (aside from the bare accusation that seeking any extension is "dilatory") that these requests were unnecessary to pursue Mr. Yong's appeal, unauthorized by rule, or otherwise unjustified, and they conveniently omit the fact the Ninth Circuit exercised its discretion to grant each of the extension requests. Equally empty is Respondents'

1   contention that Mr. Yong has "conspire[d] or act[ed] to prevent [his] removal," <u>see</u> Ret. at 7.[10]  Completely

2   absent from their Return is any evidence to support the notion that Mr. Yong has "conspired" with his court-

3   appointed attorney to seek extension after extension for no good reason at all.  The harshness of

4   Respondents' accusations of bad faith and delay, when compared with the total lack of any evidence to

5   support these claims, is highly revealing: it demonstrates the emptiness of Respondents' arguments.

6           Moreover, the law provides no support for regarding Mr. Yong's immigration attorney's

7   requests for extensions of time as defeating his constitutional liberty interest in being free of Respondents'

8   extended detention.  What Respondents have forgotten in advancing this notion is that there exists a formal

9   ethical construct behind the attorney-client relationship between Mr. Yong and his court-appointed

10  immigration attorney that places discretion to make technical decisions such as seeking time extensions

11  firmly within the province of the attorney, not the client.  The ABA Model Rules of Professional Conduct

12  require a lawyer to "abide by a client's decisions concerning the objectives of representation," but places

13  no such requirement on decisions as to "the means by which [the objectives] shall be pursued."  ABA Model

14  Rules of Prof. Conduct, Rule 1.2(a).  The "objective" that Mr. Yong's attorney must zealously pursue in that

15  case is *relief* from the order of removal, not rapid issuance of any decision by the Court of Appeals no

16  matter what the outcome, as the government would have it.  Indeed, clients, such as Mr. Yong, are to

17  "normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to

18  accomplish their objectives, particularly with respect to technical, legal and tactical matters."  <u>Id.</u> at Rule

19  1.2 cmt. 2.  In other words, it is up to Mr. Yong's immigration attorney—not him—to determine whether

20  seeking additional time for legal briefing is appropriate to provide adequate representation in his case.

21  <u>See id.</u> at Rule 1.2 cmt. 1 (the lawyer "may take such action as is impliedly authorized to carry out the

22  representation").  Thus, the government's attempt to attribute to Mr. Yong a bad faith motive for his

23  attorney's requests for time extensions—which the government never claims were unnecessary to the

24  litigation—ignores the ethical rules of legal representation that apply to his case.  Its contention should be

25  rejected as out of touch with reality.  These arguments, like the rest of Respondents' arguments, also fail

26

27      [10]Respondent's are not "authorized by 8 U.S.C. § 1231(a)(1)(C)" to detain Mr. Yong, contrary to
    their claim, <u>see</u> Ret. at 7.  Section 1231, by its own terms, does not apply to Mr. Yong because "a court [has]
28  order[ed] a stay of removal" and has not yet issued a "final order."  <u>See</u> 8 U.S.C. § 1231(a)(1)(B)(ii).

1  to acknowledge that they themselves—and no one else—decided to impose nineteen months of continuous

2  detention on Mr. Yong.  Tactical decisions made in Mr. Yong's Ninth Circuit case, regardless by whom,

3  have no effect on the unilateral bureaucratic decision to keep Mr. Yong behind lock and key in a small cell

4  in the ICE El Centro Detention Facility.

5  //

6  //

7

8                                                    **CONCLUSION**

9             For the reasons stated above and in the petition, Respondents should be ordered to release

10 Mr. Yong from immigration custody pending resolution of his immigration appeal.

11

12                                        Respectfully submitted,

13  Dated: March 8, 2008                 /s/ JANET C. TUNG
                                         **Federal Defenders of San Diego, Inc.**
14                                       Attorneys for CHEUK FUNG YONG
                                         Email:  Janet_Tung@fd.org
15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDEX TO APPENDICES
08cv0007-LAB (WMC)

Appendix A   Transcript of Hearing

Appendix B   Transcript of Hearing

Appendix C   Transcript of Hearing

Appendix D   Transcript of Hearing

Appendix E   Transcript of Hearing

Appendix F   Respondent Request/Modification for Extension of Briefing Schedule

Appendix G   General Docket U.S.C.A. No. 07-70619

Appendix H   8 C.F.R. § 1003.2

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHEUK FUNG YONG,                          )     CASE NO. 08cv0007-LAB (WMC)
                                          )
              Petitioner,                 )
                                          )
v.                                        )     PROOF OF SERVICE
                                          )
MICHAEL CHERTOFF, et al.,                 )
                                          )
                                          )
              Respondents.                )
_____)

              I, the undersigned, say:

              1) That I am over eighteen years of age, a resident of the County of San Diego, State of California, and not a party in the within action;

              2) That my business address is 225 Broadway, Suite 900, San Diego, California, 92101;

              3) That I served the within TRAVERSE via ECF/NEF and caused to be delivered a true and correct copy of the above-mentioned document to:

              KAREN P. HEWITT
              ATTN: Civil Processing Unit
              880 Front Street
              San Diego, CA  92101

 and

              4) That I caused to be delivered a courtesy copy to Chambers of the Honorable William Q. Hayes.

              I certify under the laws of the State of California that the foregoing is true and correct. Executed on 10 March 2008 at San Diego, California.

                                          /s/ JANET C. TUNG
                                          Federal Defenders of San Diego, Inc.
                                          225 Broadway, Suite 900
                                          San Diego, CA 92101
                                          PH: (619) 234.9467
                                          Email: Janet_Tung@fd.org